UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


BILLY JOE ENGLISH,

        Petitioner,

                                  CASE NO. 2:06-CV-11552
v.                               HONORABLE ARTHUR J. TARNOW

KEN ROMANOWSKI,

        Respondent.
_____/

## OPINION AND ORDER CONDITIONALLY GRANTING
## PETITION FOR WRIT OF HABEAS CORPUS

I.    Introduction

       Michigan prisoner Billy Joe English ("Petitioner") has filed a *pro se* petition for writ of

habeas corpus pursuant to 28 U.S.C. § 2254 asserting that he is being held in violation of his

constitutional rights. Petitioner is currently confined at the Mound Correctional Facility in

Detroit, Michigan.[1] Petitioner was convicted of assault with intent to murder and carrying a

concealed weapon following a jury trial in the Oakland County Circuit Court and was sentenced

to concurrent terms of 11 years 8 months to 30 years imprisonment and two to five years

imprisonment on those convictions in 2003. In his pleadings, Petitioner raises claims concerning

the effectiveness of trial counsel, his right to an evidentiary hearing, and his right to present

defense witnesses. For the reasons stated herein, the Court concludes that Petitioner was denied

_____

[1]At the time he filed this action, Petitioner was confined at the Gus Harrison Correctional
Facility in Adrian, Michigan where Respondent is the warden.

the effective assistance of counsel at trial and conditionally grants the petition for writ of habeas

corpus.

II.     Facts

Petitioner's convictions arise from the stabbing of Ron Higdon at a residence in Pontiac,

Michigan on April 28, 2002.  The Michigan Court of Appeals set forth the relevant background

facts, which are presumed correct on habeas review, *see Monroe v. Smith*, 197 F. Supp. 2d 753,

758 (E.D. Mich. 2001), *aff'd.* 41 Fed. Appx. 730 (6th Cir. 2002), as follows:

> Defendant's convictions arise from the April 28, 2002, stabbing of Ron Higdon in
> the apartment of defendant's girlfriend, Lydia Ceruti.  Higdon lived with Ceruti
> and her three children, FN1 and one of his friends, Daniel Lamont.  Ceruti had
> recently ended her long-term dating relationship with Higdon because she had
> begun a relationship with defendant.  Higdon planned on moving out of the
> apartment around May 3, 2002.  On April 28, 2002, at approximately 9:30 p.m.,
> Higdon saw defendant, Ceruti, and one of the children in a car in front of the
> apartment.  Higdon spoke with Ceruti, and then left.  Some time later, he returned
> to the apartment, and saw defendant sitting on the couch.  Ceruti, Lamont, and the
> three children were also present.  Defendant and Higdon had a conversation about
> the children for a while, and ended with the two men shaking hands.  Ceruti began
> arguing with Higdon and ordered him to leave the apartment.  Higdon then asked
> Ceruti to speak with him in private, and turned to leave, but before he could, he
> felt a hard impact in the small of his back and felt and extreme pain, burning, and
> stinging.  Higdon turned and saw defendant with a knife in his hand.  Higdon
> grabbed defendant's wrist and slammed him into the wall, and defendant pulled a
> second knife with his free hand, and began to attack Higdon with it.  Defendant
> told Higdon that he was "going to kill" Higdon.  Higdon managed to escape and
> hide in a bedroom, and call for a ambulance with his mobile phone.  Higdon was
> taken to Pontiac Osteopathic Hospital, and his treating physician testified that his
> injuries, eleven knife wounds that resulted in over one hundred stitches and a
> substantial loss of blood, would likely have resulted in Higdon's death had he not
> received treatment.
>
> Defendant's theory of the case is that Higdon had already been evicted from the
> apartment, and that he broke into it on April 28, 2002, pulled a knife, and began

threatening Ceruti. Defendant then pulled a knife and the stab wounds he
inflicted were in self-defense.

FN1. Higdon is the father of Ceruti's two elder children and defendant is the
father of the youngest, although Higdon had, for a time, believed he was the
father of all three children.

*People v. English*, No. 247354, 2004 WL 1292789, *1 (Mich. Ct. App. June 10, 2004)

(unpublished).

Ron Higdon and Petitioner were the two most critical witnesses who testified at trial. Of

the additional witnesses who appeared, the most notable for purposes of this case were Daniel

LaMont and Kevin Whitehouse. LaMont, a hearing-impaired man who lived in the Ceruti

residence at the time of the incident, testified with the aid of an interpreter and essentially

corroborated Higdon's version of events. LaMont also testified that Lydia Ceruti planted a knife

at the scene and threatened him because of his testimony supporting Higdon. Kevin Whitehouse,

Higdon's brother-in-law, testified that, sometime after the incident, Petitioner told him that he

wished he had killed Higdon. Whitehouse also testified that Ceruti had asked him to lie at trial.

He claimed that she offered him sexual favors and then made threatening calls to him before

trial.

During opening statements, trial counsel indicated that he was going to call Lydia Ceruti[2]

as a witness to support Petitioner's claim that he acted in self-defense. Counsel explained that

Ceruti would testify that Higdon had not lived in the apartment for several weeks, that he broke

_____

[2]Lydia Ceruti is now married to Petitioner and is known as Lydia English. For
consistency and clarity, however, the Court shall continue to refer to her as Lydia Ceruti.

3

in armed with a knife, and that he threatened her – which led to the fight and caused Petitioner to stab Higdon in self-defense. At trial, however, trial counsel did not call Ceruti as a witness (nor did the prosecution) and counsel instead relied solely upon Petitioner's own testimony to support the self-defense claim.

III.  Procedural History

Following his convictions, Petitioner filed a motion for new trial and/or an evidentiary hearing ("*Ginther* hearing") on his ineffective assistance of counsel claims with the state trial court, which was denied. *People v Ginther*, 390 Mich 436 (1973). Petitioner then filed an appeal as of right with the Michigan Court of Appeals raising the same claims contained in the present petition. The Michigan Court of Appeals affirmed his convictions. *People v. English*, No. 247354, 2004 WL 1292789 (Mich. Ct. App. June 10, 2004) (unpublished). Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied. *People v. English*, 472 Mich. 866, 692 N.W.2d 841 (2005).

Petitioner thereafter filed his federal habeas petition, raising the following claims as grounds for relief:

I.     The trial record in this case establishes that defense counsel was ineffective for not calling witness Lydia Ceruti (English) as a defense witness.

II.    Even if the trial record alone does not demonstrate ineffective assistance, he is entitled to an evidentiary hearing.

III.   The trial court violated his Fourteenth Amendment right to due process of law by denying him a fair opportunity to present witnesses in opposition to the claims against him.

IV.     He was denied the effective assistance of counsel where counsel failed to
        investigate the allegations against him, failed to contact witnesses, or
        prepare any defense strategy.

V.      Defense counsel was ineffective for failing to call witness Steve
        McDaniel, landlord at 19 Clark Street.

VI.     Defense counsel was ineffective for failing to impeach the testimony of
        prosecution witness Daniel Lamont.

Respondent filed an answer to the petition contending that it should be denied for lack of

merit. The Court thereafter appointed counsel to represent Petitioner and ordered the parties to

file supplemental briefs on Petitioner's ineffective assistance of counsel claims. After the parties

did so, the Court conducted an evidentiary hearing on the ineffective assistance of counsel

issues.

At that hearing, Petitioner testified that he met with trial counsel twice before trial, once a

few months before trial and again three days before trial. Petitioner claimed self-defense and

provided counsel with the names of three possible witnesses – Lydia Ceruti, Karen English, and

Steve McDaniel. Counsel told Petitioner that he would call Ceruti to corroborate the self-

defense claim, but then did not call her nor really explain why he did not do so. Petitioner also

testified that he did not learn of Ceruti's alleged threats to witness Kevin Whitehouse until

Whitehouse testified at trial.

Lydia Ceruti testified that she witnessed the fight between Higdon and Petitioner at her

apartment. She met with Petitioner's trial counsel once before trial and he told her that she was

going to testify on Petitioner's behalf. However, he did not call her at trial. Counsel later explained that he did not call her because he believed that Petitioner did a good job on his own.

Ceruti also described the testimony that she would have given if she had taken the stand. Ceruti testified that she had been in a relationship with Ronald Higdon, the father of two of her children, but they had ended their relationship and he had moved out a few months before the incident. She testified that Higdon was a crack cocaine user, was abusive, and was angry when he learned that Petitioner was the father of her third child. Petitioner knew about Higdon's abusive conduct. Ceruti testified that she let Higdon into her home to see his children earlier on the day of the incident. When she asked him to leave, however, he refused and asked if he could stay for few days because he had nowhere else to go. He grabbed her arm, pulled her into the bathroom, had her remove her clothes, and criticized her. Ceruti picked up her son (Petitioner's child) and told Higdon that she was going to her mother's house. She then went to Petitioner's residence and called 911. She returned to her apartment with Petitioner and their son and they sat outside in the car waiting for the police. Higdon came out to the car several times. Ceruti called 911 five times that day and it took the police five hours to arrive at the residence. Higdon left before the police arrived. Higdon returned about half an hour after the police left. He had a few words with Petitioner and again asked Ceruti if he could stay for a few days. Hidgon seemed angry and agitated at the time. When Higdon tried to pull her into the hallway, Petitioner got up and they started fighting. Ceruti testified that Higdon pulled out a long kitchen knife and tried to throw Petitioner from a banister. She said that was when the knives came into

6

play and Petitioner used his two knives.  Higdon ran into their daughter's bedroom after being

stabbed and called 911 on a cell phone.  Petitioner did not follow him into the room.

Ceruti denied threatening witnesses Daniel Lamont and Kevin Whitehouse.  She testified

that she had asked LaMont to move out of her apartment after finding a crack pipe in the living

room.  When she tried to get her key from him, he forcibly grabbed her hand before leaving with

the key.  She reported this incident to the police.  Ceruti testified that Whitehouse lied when he

testified that she had threatened him because he wanted Petitioner locked up so that he

(Whitehouse) could have a relationship with her.  Ceruti claimed that Whitehouse called her and

came to her house several times after the incident.

Trial counsel testified that he planned on calling Lydia Ceruti to testify about the incident

and Hidgon's abusive conduct until he learned about her threats to Daniel Lamont and Kevin

Whitehouse.  He learned of Whitehouse's allegations either the day he testified or the previous

day.  He believed that any threats and/or promises of sexual favors to Whitehouse would be

admissible if Ceruti testified.  He objected to the admission of Daniel Lamont's testimony

regarding threats during a sidebar conference at trial, but the judge overruled his objection.  He

stated that he was also concerned about LaMont's testimony that Ceruti had planted a knife at

the scene.  He testified that his discussions with Ceruti made him believe that she would commit

perjury if she testified.  He stated that he changed his mind about having Ceruti testify as the

case evolved during trial.  He admitted that he received a discovery packet, but did not recall

whether he reviewed any 911 police reports.  He explained that he did not call landlord Steve

McDaniel as a witness because McDaniel was not present during the incident and he did not

believe that McDaniel would have relevant information.

The prosecutor also testified at the hearing, essentially providing his assessment of the

case and Lydia Ceruti's credibility, and describing how he would have cross-examined Ceruti

and impeached her testimony. He recalled sharing his concerns about Ceruti's testimony with

defense counsel at the time of trial.

Following the hearing, the parties filed additional supplemental briefs addressing the

ineffective assistance of counsel claims. The matter is now ready for decision.

IV.    Discussion

    A.    Standard of Review

    Federal law imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim –
>
> (1)    resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> State court proceedings.

28 U.S.C. § 2254(d). Additionally, this Court must presume the correctness of state court factual

determinations. 28 U.S.C. § 2254(e)(1).

B.      Ineffective Assistance of Counsel Claims

Petitioner asserts that he is entitled to habeas relief because trial counsel was ineffective for failing to call Lydia Ceruti and Steve McDaniel as witnesses, for failing to investigate and prepare a defense, and for failing to sufficiently impeach witnesses Daniel Lamont and Kevin Whitehouse. Respondent contends that this claim lacks merit.

In *Strickland v. Washington,* 466 U.S. 668 (1984), the United States Supreme Court set forth a two-pronged test for determining whether a habeas petitioner has received the ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. 466 U.S. at 687. Second, the petitioner must establish that counsel's deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id.*

With respect to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Id.* at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. The court must recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690. The petitioner bears the burden of overcoming the presumption that the challenged actions might be considered sound trial strategy. *Id.* at 689.

To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.* "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

1.    Failure to Call Lydia Ceruti as a Witness

Petitioner first asserts that defense counsel was ineffective for failing to call Lydia Ceruti as a defense witness, particularly since counsel told the jury during opening statements that she was going to testify on Petitioner's behalf at trial. Petitioner claims that Ceruti would have bolstered his defense by testifying that Higdon broke into the apartment, threatened her, and pulled a knife, thereby causing Petitioner to respond by pulling a knife in self-defense.

While decisions as to what evidence to present and whether to call certain witnesses are generally presumed to be a matter of trial strategy, the failure to call witnesses or present other evidence may constitute ineffective assistance of counsel when it deprives a defendant of a substantial defense. *See Chegwidden v. Kapture*, 92 Fed. Appx. 309, 311 (6th Cir. 2004); *Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002). Further, even when making strategic decisions, counsel's conduct must be reasonable. *See Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000); *see also Wiggins v. Smith*, 539 U.S. 510, 522-23 (2003).

10

The state courts refused to hold an evidentiary hearing on this issue. Nonetheless, the

Michigan Court of Appeals denied relief on this claim finding that Lydia Ceruti's testimony

would have been cumulative to Petitioner's own testimony, and concluding that trial counsel

"likely made the decision not to call Ceruti as a witness for strategic reasons" due to the contrary

and/or impeaching testimony given by Daniel LaMont and Kevin Whitehouse. The court then

held:

> [D]efendant has failed to rebut the presumption that trial counsel's decision not to
> call Ceruti has a witness was sound trial strategy, that defendant has [not]
> overcome [the] 'strong presumption' that the performance of his trial counsel was
> sufficient, and that the trial court did not err when it denied defendant's motion
> for new trial and/or a *Ginther* hearing.

*English*, 2004 WL 1292789 at *2.

The Michigan Court of Appeals did not reach the issue of prejudice as to this ineffective

assistance of counsel claim.

Having considered the matter, this Court concludes that the Michigan Court of Appeals'

decision constitutes an unreasonable application of *Strickland* under the circumstances of this

case. First, contrary to the Michigan Court of Appeals' decision, Lydia Ceruti's testimony was

not merely cumulative to Petitioner's testimony. Lydia Ceruti was the only witness who would

have corroborated Petitioner's version of events. In an assault case where the disputed issue

concerns who was the aggressor, corroborating testimony is critical to a self-defense claim. *See*

*United States v. Holder*, 248 Fed. Appx. 863, 872 (10th Cir. 2007) (noting that witness's

testimony in "swearing match" between parties regarding shooting death would have provided

11

powerful corroboration for the defendant's self-defense claim); *Smith v. Dretke*, 417 F.3d 438, 444 (5th Cir. 2005) (noting that a self-defense claim without corroboration can be easily discounted by prosecution); *Riley v. Payne*, 352 F.3d 1313, 1319-21 (9th Cir. 2003) ("It should have appeared to a reasonable defense counsel that [the on-scene witness's] testimony might bolster [the defendant's] tale of self-defense").

The United States Court of Appeals for the Sixth Circuit has ruled that defense counsel may be deemed deficient for failing to call witnesses whose testimony would corroborate the defendant's version of events, and that such evidence is not merely cumulative. *See Stewart v Wolfenbarger*, 468 F.3d 338, 358-59 (6th Cir. 2007) (citing cases and holding that the testimony of two alibi witnesses was not cumulative to the defendant's own testimony); *see also Workman v. Tate*, 957 F.2d 1339, 1345-46 (6th Cir. 1992) (finding that the testimony of two defense witnesses, which would have corroborated certain witnesses' testimony and contradicted police officers' testimony, was not merely cumulative).

In this case, had Lydia Ceruti been called to testify, she would have bolstered Petitioner's claim that he acted in self-defense and would have contradicted Ronald Higdon's and Daniel LaMont's testimony about who was the aggressor and whether Petitioner action's during the fight were reasonable. To this end, she would have also testified about Higdon's abusive conduct and her own attempts to contact the police on the day in question. Additionally, Ceruti could have provided testimony which would have challenged the credibility and impartiality of Daniel LaMont and Kevin Whitehouse. By failing to call Ceruti as a witness, trial counsel

allowed Higdon's and Lamont's version of events, as well as LaMont's and Whitehouse's

attacks on her credibility and the defense case, to go unchallenged save for Petitioner's own

testimony.

Second, contrary to the Michigan Court of Appeals' decision, defense counsel's conduct

in failing to call Lydia Ceruti cannot be deemed sound trial strategy. At the evidentiary hearing,

trial counsel provided four reasons why he did not call Ceruti as a witness at trial – despite the

fact that he had informed the jury that she would testify for the defense. Counsel first stated that

he did not call Ceruti as a witness because she had threatened Daniel Lamont and pressured him

to change his testimony. The allegations of those threats, however, had come out during the

preliminary examination and had already been disclosed by Lamont during his trial testimony.

Counsel thus knew of this credibility concern before he promised to call Ceruti as a witness. By

not calling Ceruti to testify, counsel did not suppress the damaging testimony but instead

allowed it to be considered by the jury without being refuted by the person best-suited for that

task – Lydia Ceruti.

Counsel also stated that he did not call Ceruti as a witness because she had offered sexual

favors to Kevin Whitehouse and then threatened him in an effort to influence his testimony.

Counsel claimed that he did not learn of this damaging information until Whitehouse testified at

trial or shortly beforehand. However, well-established federal law requires that defense counsel

conduct a reasonable investigation into the facts of a defendant's case, or to make a reasonable

determination that such investigation is unnecessary. *See Wiggins*, 539 U.S. at 522-23;

*Strickland*, 466 U.S. at 691; *Stewart*, 468 F.3d at 356; *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005); *O'Hara v. Wiggington*, 24 F.3d 823, 828 (6th Cir. 1994). "American Bar Association standards ... also mandate counsel's duty to investigate all leads relevant to the merits of the case." *Blackburn v. Foltz*, 828 F.2d 1177, 1183 (6th Cir. 1987); *see also Rompilla v. Beard*, 543 U.S. 374, 387 (2005) (noting that the ABA standards provide guidance for determining the reasonableness of counsel's conduct). The duty to investigate "includes the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence." *Towns*, 395 F.3d 251 at 258. "A purportedly strategic decision is not objectively reasonable when the attorney has failed to investigate his options and make a reasonable choice between them." *Id.* (quoting *Horton v. Zant*, 941 F.2d 1449, 1462 (11th Cir. 1991)). Inattention or negligence, as opposed to reasoned strategic judgment, is inexcusable. *See Wiggins*, 539 U.S. at 526; *Sims v. Livesay*, 970 F.2d 1575, 1580-81 (6th Cir. 1992). Counsel provided no reasons why he failed to investigate Kevin Whitehouse or learn of his challenges to Ceruti's credibility before trial. Again, by not calling Ceruti to testify, counsel did not suppress the damaging testimony but instead allowed it to be considered by the jury without being refuted by the person in the best position to do so.

Counsel also stated that he did not call Ceruti as a witness because he was concerned that she would commit perjury and her testimony would be detrimental to the defense case. Counsel, however, did not provide specific reasons why he thought that Ceruti would provide false testimony or why her testimony would harm the defense. The fact that the prosecution did not

believe Ceruti's story or that her testimony would have conflicted with some of the other witnesses does not mean that Ceruti would have committed perjury. It is the jury's job to evaluate the credibility of witnesses. *See, e.g, Ramonez v. Berghuis*, 490 F.3d 482, 490 (6th Cir. 2007). Moreover, even accepting that counsel did not to call Ceruti as a witness because he was concerned about presenting perjured testimony, counsel provided no reasons why he failed to investigate such matters and make such a determination prior to trial – and before promising that Ceruti would testify on Petitioner's behalf.

Counsel also testified that he did not call Ceruti to testify because he learned that she had planted a knife at the scene to bolster Petitioner's claim that Ronald Higdon was armed with a knife and was the aggressor. Again, counsel appears to have accepted the prosecution's version of events, and Ronald Higdon's and Daniel LaMont's testimony as true, despite the fact that Petitioner and Lydia Ceruti would have provided conflicting testimony. Again, the damaging information was already before the jury at trial and Ceruti was best-suited to refute such testimony. Furthermore, and perhaps more importantly, counsel was or should have been aware of the damaging information given that the knife-planting allegation surfaced during the preliminary examination. Counsel should have known or recalled this information before trial and before promising that Ceruti would testify for the defense. Counsel's conduct cannot be deemed sound and strategic when it derives from a failure to properly investigate and prepare his case.

The unreasonableness of counsel's failure to call Lydia Ceruti, as well as its detrimental impact on the defense, is exacerbated by the fact that he told the jury during opening statements that Ceruti would testify on Petitioner's behalf at trial.  As aptly explained by another court:

> Turnabouts of this sort may be justified when "unexpected developments ... warrant ... changes in previously announced trial strategies." *Ouber v. Guarino*, 293 F.3d 19, 29 (1st Cir. 2002) (citing *Dutton v. Brown*, 812 F.2d 593, 598 (10th Cir.), *cert. denied*, 484 U.S. 836, 108 S. Ct. 116, 98 L. Ed. 2d 74 (1987)); *see also, e.g., Drake v. Clark*, 14 F.3d 351, 356 (7th Cir. 1994). However, when the failure to present the promised testimony cannot be chalked up to unforeseeable events, the attorney's broken promise may be unreasonable, for "little is more damaging than to fail to produce important evidence that had been promised in an opening." *Anderson v. Butler*, 858 F.2d 16, 17 (1st Cir. 1988); *see also Washington v. Smith, supra*, 219 F.3d at 634 (failure to produce witness identified in notice of alibi and mentioned during voir dire gave rise to "negative inference" against the defendant).

*U.S. ex rel. Hampton v. Leibach*, 347 F.3d 219, 257 (7th Cir. 2003); *see also McAleese v. Mazurkiewicz*, 1 F.3d 159, 166-67 (3rd Cir. 1993) ("The rationale for holding such a failure to produce promised evidence ineffective is that when counsel primes the jury to hear a different version of the events from what he ultimately presents, one may infer that reasonable jurors would think the witnesses to which counsel referred in his opening statement were unwilling or unable to deliver the testimony he promised."); *Harris v. Reed*, 894 F.2d 871 (7th Cir. 1990) (the failure to fulfill promises made during opening statements may constitute deficient representation); *Anderson v. Butler*, 858 F.2d 16, 17 (1st Cir. 1988) ("little is more damaging than to fail to produce important evidence that had been promised in an opening"); *but cf. Harrison v. Motley*, 478 F.3d 750, 758 n. 4 (6th Cir. 2007), *cert. den.* _ U.S. _, 128 S. Ct. 444 (2007) (expressing no opinion as to whether the failure to fulfill promises made during opening

statements, by itself, is a "clearly established" basis for a claim of ineffective assistance of

counsel).  Because Lydia Ceruti was the only witness who could corroborate Petitioner's version

of events and because counsel failed to call her as a witness despite his promise to do so,

counsel's performance was deficient.

The remaining question is whether counsel's deficient performance prejudiced the

defense.  When an attorney fails to present evidence, the question is whether the evidence which

was not revealed, "might well have influenced the jury's appraisal of [the petitioner's]

culpability" and whether "the likelihood of a different result if the evidence had gone in is

sufficient to undermine confidence in the outcome actually reached...."  *Rompilla*, 543 U.S. at

393 (internal citations and quotation marks omitted); *see also Wilson v. Parker*, 515 F.3d 682,

698-99 (6th Cir. 2008).

As previously mentioned, the Michigan Court of Appeals did not reach the issue of

whether Petitioner was prejudiced by trial counsel's failure to call Lydia Ceruti as a witness

given its determination that Petitioner had not shown that counsel was deficient.  Consequently,

this Court must examine the prejudice component of the *Strickland* standard *de novo*.  *See Avery*

*v. Prelesnik*, _ F.3d _, 2008 WL 4977359, *4 (6th Cir. Nov. 25, 2008) (citing *Rompilla*, 545 U.S.

at 390; *Wiggins*, 529 U.S. at 534).

Having undertaken such a review, and having considered Lydia Ceruti's affidavit and her

testimony at the evidentiary hearing, the Court finds that Ceruti's testimony might well have

influenced the jury's appraisal of Petitioner's guilt.  The likelihood of a different result had her

testimony been presented is sufficient to undermine the Court's confidence in the outcome at

trial.  As discussed *supra*, Ceruti was the only person who would have corroborated Petitioner's

self-defense claim and her testimony would have also challenged the credibility of Ronald

Higdon, Daniel LaMont, and Kevin Whitehouse.  As stated by the Sixth Circuit in a similar case,

"though the jury could have discredited the potential [witness] here based on factors such as bias

and inconsistencies... there certainly remained a reasonable probability that the jury would not

have....All it would have taken is for 'one juror [to] have struck a different balance' between the

competing stories." *Ramonez*, 490 F.3d at 491 (citing *Wiggins*, 529 U.S. at 537 and ruling that

counsel was ineffective for failing to call corroborating alibi witnesses); *accord Washington v.

Smith*, 219 F.3d 620, 634 (7th Cir. 2000) (counsel's failure to present corroborating alibi

witnesses to counter the prosecution's identification testimony was prejudicial even though the

jury had considered and rejected the defendant's alibi).  Because trial counsel failed to call

Ceruti to the stand, the jury never had the chance to evaluate all of the relevant testimony and

make a fully-informed decision as to Petitioner's guilt or innocence.  This undermines the

Court's confidence in the outcome.

Furthermore, the prejudicial effect of counsel's failure to call Ceruti as a witness was

exacerbated by the fact that counsel promised the jury that she would testify on Petitioner's

behalf at trial.  When Ceruti was not produced, the jury was left to conclude that either she

would not or she could not testify in his favor, thereby giving further credence to the

prosecution's theory of the case.  Simply put, Ceruti's testimony would have balanced the scale

of witness testimony at trial. When faced with such competing and more equalized versions of

events, there is a reasonable probability that the jury would have been left with a reasonable

doubt as to Petitioner's guilt of assault with intent to murder. *See Strickland*, 466 U.S. at 695

(petitioner must show "a reasonable probability" that absent his trial attorney's errors, "the

factfinder would have had a reasonable doubt respecting guilt"); *Avery, supra* ("We do not ask

whether [the petitioner] was ultimately innocent, but, rather, whether he was deprived a

reasonable shot of acquittal."); *Smith v. Dretke*, 417 F.3d 438, 443-44 (5th Cir. 2005) (finding

prejudice where counsel failed to present witness to corroborate the petitioner's self-defense

claim). By failing to call Lydia Ceruti to testify at trial, counsel deprived Petitioner of any

reasonable chance of acquittal, or conviction of a lesser offense. The Court thus concludes that

trial counsel was ineffective under *Strickland* and that the Michigan Court of Appeals' decision

to the contrary is unreasonable. Habeas relief is warranted on this claim.

      2.     <u>Failure to Investigate and Prepare the Case</u>

      Petitioner relatedly claims that counsel was ineffective for failing to investigate his case

and prepare a defense. In making this argument, Petitioner focuses on counsel's failure to

investigate and produce Lydia Ceruti at trial. As noted, well-established federal law requires

that defense counsel conduct a reasonable investigation into the facts of a defendant's case, or to

make a reasonable determination that such investigation is unnecessary. *See Strickland*, 466

U.S. at 691; *Stewart*, 468 F.3d at 356; *Towns*, 395 F.3d at 258; *see also Rompilla*, 543 U.S. at

387.  The duty to investigate "includes the obligation to investigate all witnesses who may have

information concerning his or her client's guilt or innocence."  *Towns*, 395 F.3d 251 at 258.

The Michigan Court of Appeals did not address this specific issue, but appears to have

considered it as part of Petitioner's claim that trial counsel was ineffective for failing to call

Lydia Ceruti to testify at trial.  *See English*, 2004 WL 1292789 at *2 n. 3 (stating that two of the

issues in Petitioner's supplemental brief "reiterate his argument that trial counsel erred in not

calling Ceruti as a witness").  This Court finds that the state court's decision constitutes an

unreasonable application of *Strickland* for the reasons set forth previously.  In sum, trial counsel

was ineffective for failing to fully investigate Lydia Ceruti and matters (including witnesses

LaMont and Whitehouse) related to her credibility prior to trial.  Had counsel conducted a more

thorough investigation before trial, he would have been better able to evaluate Lydia Ceruti's

testimony and its value to the defense case.  He then could have made an informed and reasoned

decision to either:  (a) call Ceruti to testify on Petitioner's behalf as promised during opening

statements and defend her credibility, or (b) not call Ceruti to testify and make no promises to

the jury that she would appear.  Counsel simply did not conduct an adequate investigation of the

case before trial and Petitioner's defense suffered the consequences.  Habeas relief is warranted.

3.      Failure to Call Steve McDaniel

Petitioner also asserts that counsel was ineffective for failing to call Ceruti's landlord,

Steve McDaniel, to testify at trial.  The Michigan Court of Appeals denied relief on this claim

finding that Petitioner had failed to establish that counsel was deficient or that he was prejudiced

by counsel's conduct. *See English*, 2004 WL 1292789 at *2 n. 3. This decision is neither

contrary to *Strickland* nor an unreasonable application of the law or the facts. First, the record

reflects that McDaniel was not present when the altercation occurred. Thus, any testimony by

McDaniel would have been of marginal relevance. Second, while Petitioner asserts that

McDaniel could have provided testimony about his residency status and possibly other matters,

he has failed to present an affidavit or other testimony from McDaniel to support his claim.

Conclusory allegations without evidentiary support do not provide a basis for habeas relief. *See,*

*e.g., Workman v. Bell*, 160 F.3d 276, 287 (6th Cir. 1998). Third, Petitioner has not shown that

any testimony by McDaniel regarding Ronald Higdon's residency would have bolstered his

defense. Higdon admitted that he used a butter knife to open the door and enter the apartment

and the jury was well aware that Higdon and Ceruti had ended their relationship. Petitioner has

not established that counsel was deficient and/or that he was prejudiced by counsel's conduct in

this respect. Habeas relief is not warranted on this basis.

       4.     <u>Failure to Impeach Witnesses</u>

     Petitioner also asserts that counsel was ineffective for failing to sufficiently impeach

prosecution witnesses Daniel Lamont and Kevin Whitehouse. Petitioner emphasizes Lamont's

hearing impairment and Whitehouse's complaints of threats. The Michigan Court of Appeals

denied relief on this claim finding that Petitioner had failed to establish that counsel erred or that

he was prejudiced by counsel's conduct. *See English*, 2004 WL 1292789 at *2 n. 3.

The state court's decision is neither contrary to *Strickland* nor an unreasonable application of the law or the facts. The record reveals that defense counsel cross-examined Lamont extensively about his version of events and his ability to see and hear what occurred during the altercation between Petitioner and Ronald Higdon. Counsel also attempted to impeach Lamont's testimony with his prior preliminary examination testimony. The jury was well aware of Lamont's hearing impairment given his trial testimony and the fact that he used an interpreter at trial.

The record also reveals that defense counsel adequately cross-examined Kevin Whitehouse. Petitioner claims that counsel should have obtained telephone records to dispute Whitehouse's testimony that Lydia Ceruti intimidated him by calling him numerous times and that counsel should have emphasized that Whitehouse is much larger than Ceruti. Petitioner, however, presents no phone records to support his claim. Additionally, Whitehouse testified that Ceruti threatened to send other people to harm him. Given such circumstances, Petitioner has not shown that counsel erred and/or that he was sufficiently prejudiced by counsel's conduct in questioning Daniel Lamont and Kevin Whitehouse. Habeas relief is not warranted on this basis.

C.     Right to Present a Defense Claim

Lastly, Petitioner asserts that he is entitled to habeas relief because the trial court denied him a fair opportunity to present witnesses in support of his defense. Respondent contends that this claim lacks merit. The right of an accused to present a defense has long been recognized as "a fundamental element of due process." *Washington v. State*, 388 U.S. 14, 19 (1967); *see also*

*United States v. Scheffer*, 523 U.S. 303, 308 (1998); *Crane v. Kentucky*, 476 U.S. 683, 689-90

(1986). In making this claim, Petitioner focuses on the fact that Lydia Ceruti was not called to

testify as a defense witness. The trial court, however, did not deny Petitioner the opportunity to

present Ceruti as a witness. Rather, defense counsel made a decision not to call her to testify.

Consequently, the trial court did not violate Petitioner's rights. Habeas relief is not warranted on

this claim.

V.      Conclusion and Order

For the reasons stated, the Court concludes that Petitioner was denied the effective

assistance of counsel at trial and that the state court's decision to the contrary constitutes an

unreasonable application of federal law and the facts. Accordingly, the Court

**CONDITIONALLY GRANTS** the petition for writ of habeas corpus. The State shall either

release Petitioner or institute proceedings to retry him within 90 days of the filing date of this

opinion. Should the State fail to do so, Petitioner may move for an unconditional writ seeking

immediate release from custody. Should the State appeal this decision to the United States Court

of Appeals for the Sixth Circuit, this order is stayed pending the disposition of that appeal.

        **IT IS SO ORDERED**.

                                        S/Arthur J. Tarnow
                                        Arthur J. Tarnow
Dated: December 9, 2008                  United States District Judge

I hereby certify that a copy of the foregoing document was served upon parties/counsel of record on December 9,
2008, by electronic and/or ordinary mail.

                                        S/Catherine A. Pickles
                                        Judicial Secretary

23